Mr. Gambaryan has a viable claim for asylum from Armenia but for his adverse credibility finding. I reviewed the board's decision and there's four grounds that they're relying on to support the adverse credibility finding. I believe all four are clearly erroneous. The first one and the second one are what the court deemed differences between his oral testimony and his written declaration for asylum. They're omissions. They're not discrepancies. That's the most important point. They weren't in his written declaration but they were in his testimony. It used to be years ago petitioners were allowed to expand on their asylum declaration. It was pretty regular practice in immigration courts. So omissions are not indicative of deception. They're unworthy of a ground to support an adverse credibility by themselves. Let me ask you about one of the ones. We have two sets of issues that the IJ seems to rely on and one the IJ and BIA just simply seem to be mistaken. But as to the walk-a-thon, it was in your client's asylum statement and then he did not testify about it at the hearing. He was represented by counsel at the hearing so I'm not sure his failure to testify was because of the nature of the questions and he only testified about it when prompted by the IJ. So as to that, which seems like a fairly significant event, can you address why you don't think the IJ? Yeah, I was going to say, I think one and two are thrown out for what I said. I have this one numbered number four, the walk-a-thon. I have it number four too but it seems to be the number one. What I would argue, yeah. But it may be number one on the hit list. The most damaging one. Yeah, yeah, yeah. Good point. If you look at the examination that the government lawyer was asking and the judge jumped in and continued the questioning. But if you read it, it says, was there any other rally that was organized in 2001 after March or April? And the applicant says, I don't remember, I'm sorry. Now later they refresh his recollection and they say, what about the walk-a-thon? The question was, was there a rally? So maybe in his mind he didn't associate the walk-a-thon as a rally like a protest rally. So and then if you, after the judge questions even more, he remembers it. So I was assuming that that was what happened. It was more like a refreshing of recollection. There was no discrepancy. So let me ask a question about this differently. Yeah. Explanations were given for the alleged forgetting. The BIA doesn't seem to address or the IJ doesn't seem to look at those explanations and say, I either believe them or don't believe them. Under our case law, isn't that deficient? Yes, Your Honor. They need to analyze all explanations. And my question for both sides is, can I find someplace where they analyze his excuses for having forgotten? Yeah, I think what the board says, if you read it, they say, well, since he didn't submit any evidence that he has a memory problem or medical documentation, therefore we don't believe his explanation that he simply forgot. I don't think that's a requirement. And I don't think that excuses the board's requirement to review the evidence. I would say there's a 10 year difference between the incident and his testimony at least. So that's why he forgot. I guess that's my point. You don't need medical documentation to prove that. Let's assume he said it was 10 years between the time I testified and made a statement and testified and I forgot. And the board and surely somebody is entitled to say, oh, I don't believe that. This was a really important event that you talked about. So maybe it didn't occur at all. How how much how much discussion do they have to give to their reasons for rejecting your your reason? In other words, they basically said, we don't believe you. I don't. Yeah, I know this case law that says they can't just give a boilerplate. We've reviewed the evidence. So they have to actually not only analyze the evidence, but show that they had they're supposed to provide specific and cogent reasons for rejecting it. And I guess my question is, did they do so here? No, simple answer. No, I would argue. No, but the immigration judge did give a bit of a lengthy explanation of what he saw and heard. If you look at the way he asked questions, he wasn't trying to pigeonhole the defendant or trick him. I didn't see that in his questioning at all. And he was bothered by his failure to recall his own arrest, which clearly was at the heart of his claim, was it not? Yeah. But where did the board rely on the failure to arrest? And that's what I was going to ask you about. The IJ seems to have done a more thorough job than the board. If we were to accept your argument, the board could still go back and say, well, we haven't with last time. We didn't look at the other bases for the IJ's lack of credibility finding. Now we're going to look at them. And presumably it could make a decision based on those, could it not? It's possible. Sure. But I believe we're entitled to that opportunity. So your complaint about the absence of cogent reasons is from the board, not the IJ? Right. Correct. Correct. Because we have to look at what the board said. Correct. Correct. We're appealing the board's decision, not the IJ's decision. For example, the IJ talked a lot about the overseas investigation and the board completely didn't even want to have that as part of their support grounds for the credibility decision. So what I'm saying is there's a big difference between the IJ's decision and the board's decision. And today we're analyzing the board's decision. You want to save the board's finding that the petitioner was not a credible witness is supported by substantial evidence here. And let's start, let's start from the premise that we're only reviewing the four incidents that the board cited for the adverse credibility finding. You agree on that? We note in our brief that there were two considerations that the immigration judge independently found that were not picked up. Right. And so we only, we only review what the board, the board says we're not looking at the other bases. Our law is pretty clear that we only review the basis that the board relied on. Is that correct? I would, I would say this. I don't want to, I don't want to dig in on this, your honor. I would say that you will. I don't think you can because unless you can tell me and show me some authority, but because the law seems pretty clear that we only rely on the basis that the board cites. So let's, let's start giving your case that says we look beyond that. I don't have a case to say that something that black and white, your honor. The only thing I was going to say to the extent it matters at all is you will see in terms of the scope of review, which we're talking about, you will see a lot of law, a lot of court decisions, non-circuit decisions that we'll talk about. The, the board looking at the IJ's decision as kind of as a guidepost and examining the reasoning. And so they're not, they're. But this is a case in which the board expressly said, we're not going to rely on the other reasons of credibility. We're not going to look at them. We, we, we think we have enough with these four. We're not going to look at the other ones. So in this case, whatever you can draw out of the general law, assume we're stuck with these four. And one of them just plainly wrong on the record, isn't it? I would concede that, your honor. Okay. And so let's go to, and, and we have a lot of law that says omissions in an, in an asylum statement made by somebody who doesn't speak English and isn't represented, you know, unless they seem to be done for some advantage, don't really, can't really say this is all pre ID, pre real ID case can't work. So to me, the, the centerpiece of this case is the, the number four, if you will, a question about the, about the walkathon. And we ask you why, why was his failure to mention the walkathon in response to a question about a rally? So, so damaging when immediately, when the IJ says to him, what about this? He recalls it, recalls it with details. Why is that? So, so I respectfully just think it's a, it's mischaracterization. One that was made in the brief to say that when prompted, he recalled this with detail. In fact, first, you know, let's look at it in two parts. The within this event, six significant acts all on their own, potentially rising the, so why would the omission of it at trial, at, at the hearing help him? See, I can understand finding an adverse credibility when you leave out a, a bad fact, but here he just, he was under examination. He didn't mention it under examination. Why does, why does that undermine his credibility? Because I would submit that the, the immigration judge here really bent over backwards to be accommodating and really refocused the petitioner several times with language that kind of teed up what it was he was looking for. And you have a question and answer. So what's wrong with that? No, nothing's wrong with that. I agree that he seemed to be considerate of the situation. And as I recall, when he asked about, and I think you're wrong. I think he was prompted because at one point he says to him, were you arrested? He was asked specifically and the petitioner responded. Yes. I mean, his answers were consistent when prompted, not inconsistent. So I think there might be some in the petitioner's declaration. And at the time of trial at his hearing, what you have is kind of a mashup. You have a little bit from this one, a little bit from that one. And in fact, all of the, the four signature events, what we're talking about here sequentially is an August 2000 demonstration in a fall, I believe it was October walkathon. That is the big one. Then you have a I'm sorry, a March 2002 rally or demonstration followed by a November 2002 rally or demonstration. His ultimate testimony wasn't inconsistent with his statement, was it? I would submit it was, Your Honor. It was inconsistent with the statement. So at some point the immigration judge, back to what we're talking about a minute ago, says, why don't you just tell me what you do remember? And the petitioner says, he says, do you remember, the immigration judge says, do you remember anything about the walkathon after directing, after affirmatively directing a sentence to the walkathon? Do you remember anything? Yes. I remember that during the walkathon guys were arrested. Okay. Says the judge. And then taken to the department. Which guys? Answer. The guys we organized the walkathon with. Who, says the judge, who got taken, who got arrested? Answer. Some of the guys who were organized at the rally with were arrested. Question. Who, sir? Please identify them. Answer. Oh, the names. I don't remember the names. Question. And these individuals who got detained, when, when did you see them next? I can't say. It then goes on where the judge has to say. Tell me how that's inconsistent with the asylum statement. I understand how a judge could say, you don't remember the details of this and therefore I don't find you credible. Right. But that's not what the immigration judge said. He said it, this omission was inconsistent with the asylum statement. So tell me how, what he eventually said was inconsistent with the statement. Because, okay. Specifically, what he says is, do you, he, he does not say when he asked who was arrested, he, his claim is that he was arrested. And he said guys were arrested. The notion that you would only volunteer that you were arrested if an immigration judge had to follow up with guys were arrested. What does his asylum statement say? The declaration? Yeah. Yeah. Yeah. Because you're, you, you're claiming it's inconsistent with his asylum statement. So what does his asylum statement say about this? So he says, um, six things happened that he was, had rocks thrown at him, that he was arrested. He was arrested, your honor. And did he say he wasn't arrested at these? I mean, here's, here's where I think the inconsistency is. He says guys were arrested without saying that he was arrested. Only after extensive back and forth. When, I mean, when the questions get narrower and narrower and narrower, were you arrested? Yes. Well, why didn't you say that? Oh, I didn't think the question called for it. That's, that's just not credible. And it certainly, the idea that that compels a reversal. I just think there's no support for that. When, when the immigration judge, after giving him a lot of support and a lot of help said, uh, you know, tell me what you do remember. He doesn't say people were throwing rocks at me. He doesn't say that I was cruelly He leaves out all of that. Those are omissions. I'm asking you whether he, what anything he actually testified to was inconsistent with his asylum statement. If we're getting down to that level, when, well, that's by asking that question. Understood. So tell me what was understood. I would submit that it's inconsistent to say guys were arrested and not say that he, he was arrested. I can understand your argument because I think the IJ here in both how we conducted the hearing and his order, I can understand why he found perhaps the petitioner, uh, not credible because of a number of items. My problem, I think is more focused on the BIA. Well, the, uh, there is another incident which the BIA focused on as well. And that's this August, 2000 demonstration where, uh, there was a blacklisting and the blacklisting again, I mean, the significance of this is important because what the petitioner says is that he was blacklisted and they were, uh, they were made to register as prostitutes. I mean, obviously that's a humiliating, deeply humiliating event. And he simply, um, does not mention this blacklist, uh, at his, at his hearing. And that is something that is number four. I'm sorry. That's number one in the board's reasoning. So, and I recognize this is confusing. It's been confusing for me to try to patch all this up, but number one and four in the board's reasoning are the two that we have talked about while I've been up here. Is one of them enough? In other words, if the board was correct about one, that would be enough. One is enough, um, provided it goes to the heart of the claim. And that was what I was trying to get to is that this is a significant event, a deeply troubling event that no one would forget. And it absolutely relates to the reason that he fled the country. I mean, indeed, the last thing that he says, he was said that he was told at the walk-a-thon was he would be killed if this happened again. I mean, I don't think that you forget that. And it certainly goes to the heart of the claim. Was there, I'm not sure I can tell from the record, was there a translator at the hearing? There was. Yes. But on the blacklist, it was his, you know, the IJ found Mr. Gombran was not credible, um, I guess because the court testified that he was taken to the Armenian Internal Affairs Department and placed on a blacklist, but didn't make mention of it in his declaration. Is that correct? Is that what you're saying? In the declaration is where they affirmatively did, where he did represent that. In the hearing he didn't. He did testify about the blacklist at the hearing, did he not? I'm looking at AR 196 and 197. See, that's the one where I think the board and the IJ were just mistaken. Well, again, this is one, what it relates to is kind of when he, part of it is when he said something. So at one point. Do you agree that he testified about the blacklist at the hearing? You know, I'm getting to this right now. I'm, I'm, I'm refreshing my own memory, Your Honor. I'm sorry. Um, the IJ kind of fish forward and said, you don't remember being put on a blacklist? And then at that point he said, oh, yes, I remember. See, because here's what happened. The BIA and the IJ said, you didn't mention in your asylum statement that you were placed on a back blacklist. And then you say in your brief, no, actually he admitted it from his testimony, not from his asylum statement. Right. And when I look at the record, he did testify about a blacklist. You're saying after being prompted? Yes. Right. Well, I, in some ways, I think it was in his asylum statement. You agree? Yes. Yes. And so the BIA and the IJ were wrong in saying that he admitted it from his, the IJ was wrong in saying he admitted it from his asylum statement. Right. Well, what I, what I think was happening there is they transposed it to, they flipped them. They, they said, well, they may have made a mistake, but they made a mistake. Yeah. No mistake. And the mistake therefore means that their statement was wrong. No, I, I can see that. I'm just trying to put it in a little bit of context. And, and I'm sympathetic to your problem that the IJ does a very thorough job. And for some reason, the board seizes on four incidents rather than the record as a whole. And that's why we're focused on those four. Understood, Your Honor. Thank you very much. Thank you, Your Honor. Your Honors. Finnegan, do you want to talk about the blacklist? Yes, Your Honors. The ground that the board relied on is, is not persuasive because they made the mistakes that everybody just talked about. So I believe the only thing that really is holding up a remand is the fourth ground, the walk-a-thon. Walk-a-thons are pretty unremarkable. I've attended some walk-a-thons. Yeah, but this one was remarkable. Yeah, but my point is the important point, not the walk-a-thon itself, I would argue. And it looks like Respondent was answering the questions like, what did you witness at the walk-a-thon? He said, people getting arrested. And then later they go, well, what about you? He goes, yes, of course. And then he kind of, when prompted, he talks about it. He doesn't say otherwise. And the whole calliloquy Q&A is at page 10 and page 11 of Respondent's brief. And it shows that he immediately says, I was arrested for three days. Why didn't you say that earlier? And he says, the arrest did happen. I was arrested, but that the question, I didn't realize that the question was about the arrest. Put aside the omissions issue, which I think is fairly clear on the record. He didn't testify about this stuff until prompted. Is there a discrepancy between his testimony and the asylum statement about the walk-a-thon? Your friend says, well, he said guys were arrested. He didn't say I was arrested initially. Are there any other discrepancies? I would argue there's absolutely zero discrepancies. And the incident I think that Respondent's counsel was talking about was oral testimony, not actually in the written declaration. That he at first said other people were arrested and then later talked about his own arrest because he said he didn't understand the question. It was about his arrest. It was about like what he saw at the walk-a-thon. And on that, I would say that the remand is proper. Thank you, Your Honor. Thank you very much. Thank you both for your oral argument presentations.
judges: Murguia, Hurwitz, Zouhary